GRANT *v.* THE STATE.

120　199
Case 2
f127　52

An indictment charging the accused with willfully and maliciously cutting and destroying a bridge alleged to be the private property of four persons is not supported by proof showing that only one of the parties named had any interest in the bridge, and that he claimed only an easement therein.

Submitted April 23, — Decided May 10, 1904.

Indictment for malicious mischief. Before Judge Kimsey. Hall superior court. March 16, 1904.

*H. H Dean, W. B. Sloan,* and *F. M. Johnson,* for plaintiff in error. *W. A. Charters, solicitor-general,* contra.

CANDLER, J. The indictment charged that the accused did, on a named day, "willfully and maliciously injure and destroy a certain bridge on a private road leading from Bolding's Bridge and Bark Camp to the Rocky Ford road, said bridge being the property of D. M. McKinney, William Grant, W. R. Smith, and J. T. McKinney." On the trial it appeared from the evidence that the bridge had been built at the place named by the parties who were alleged in the indictment as its owners, but that at the time of its destruction the road was used by D. M. McKinney, T. L. Robinson, Wm. A. Latham, and Dr. McKinney; that it was used for a mill road, and as a nearer way by which the parties named could go to church; that this private road had been located approximately where it was at the time of the trial for more than twenty years, and that it had been maintained at that place for about five years prior to the time the indictment was returned. The land upon which the bridge was built did not belong to the parties who built it and who were alleged to be its owners, but the owner of

the land did not object to the building of the bridge.    The bridge was cut down in August, 1902, having been built about two years prior to that time.    It was shown that the accused admitted cutting down the bridge, but claimed at the time that he owned the land on which it was built, that it was built without his permission, and that it was ruining his land.    D. M. McKinney, one of the parties who assisted in building the bridge, testified that none of those who were alleged to be its owners or who built it claimed to own the land on which it was built; that he only claimed "an easement in it for the purpose of this road."    The accused was found guilty; whereupon he made a motion for a new trial.    In addition to the general grounds, the motion complained that the following charge of the court was error:    "If the people mentioned in the bill of indictment, or any one of them, owned the property, that would be sufficient.    It would not be necessary for the State to show that every one of them owned it.    If they all had a qualified interest in the property, or if any of them had a qualified interest in the property, that is, the bridge, that would be sufficient so far as ownership is concerned."

The indictment was based on the Penal Code, § 729, which provides:    "All other acts of willful and malicious mischief, in the injuring or destroying any other public or private property not herein enumerated, shall be misdemeanors."    As has been seen, it was alleged that the bridge in question was "the property of D. M. McKinney, William Grant, W. R. Smith, and J. T. McKinney."    The evidence showed that the bridge was built by these parties, but that it was used by a community of persons other than those named as owners.    From the evidence as a whole it appears that the road was a way used by certain persons in the community as a convenience for going to church and to mill. The bridge which the accused was charged with having destroyed was built on the land of another, who had nothing to do with its erection.    It was in no sense the private property of its builders. They were not in possession of it.    Under the laws governing private ways, they may have had the right to travel on the road and to cross the bridge, but neither could be said to be their property.    The State having alleged private ownership of the bridge in the four parties named in the indictment, it was necessary, before the accused could be legally convicted, to prove that they

owned it; and it is needless to say that this is not done by proving that one of the parties named had an easement in the bridge. This case is 'clearly distinguishable from that of *Castleberry* v. *State*, 62 *Ga.* 442. There the accused was indicted for cutting down a dam which let water into a ditch through which it was conveyed for mining purposes. The indictment alleged that the property was that of one John A. Parker. The evidence on the trial showed that the title was in a corporation, all the stock of which belonged to Parker, and he was in actual possession of the property. The fact of his possession would of itself have supported the allegation of ownership in the indictment, regardless of whether he owned the property or not. The case under consideration is totally different as to its facts, and is not in any sense in conflict with the case cited. See *Harris* v. *State*, 73 *Ga.* 41 ; 2 Whart. Cr. L. (7th ed.) § 2012. For the reasons stated we conclude that the charge quoted was error, and that the case should go back for another hearing.

*Judgment reversed. All the Justices concur.*